UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANITRA LINZY on behalf of the estate of CYNTHIA GREEN,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | **Civil Case No. 22-1752 (RJL)** |
| **v.** | ) ) | |
| **MEDSTAR WASHINGTON HOSPITAL CENTER,** | ) ) ) ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**
(February _17_, 2023) [Dkt. #6]

MedStar Washington Hospital Center was sued for medical malpractice by the daughter of a patient who passed away from COVID-19 while under the hospital's charge. Because the District of Columbia's then-applicable COVID-19 immunity statute applies and forecloses the medical malpractice claim—at least as pleaded in the operative complaint—the Court will GRANT the hospital's motion to dismiss without prejudice.

## BACKGROUND

**I.      Factual Background**

According to the well-pleaded factual allegations in the complaint, Cynthia Green was admitted to MedStar Washington Hospital Center ("MWHC") for the treatment of asthma on January 23, 2021. Pl.'s Compl. for Wrongful Death ("Compl.") [Dkt. #1] ¶¶ 11–12. At the time, she was also on dialysis. *Id.* ¶ 15. Upon admittance, she tested negative for COVID-19. *Id.* ¶¶ 13–14.

1

Sometime during her first seven days staying at the hospital, Green was "incorrectly placed" in a room with an elderly patient who had tested positive for COVID-19 and had been undergoing treatment thereof for approximately eighteen days. *Id.* ¶ 17. Green then tested positive for COVID-19 on January 30. *Id.* ¶ 18.

Her condition quickly deteriorated after being diagnosed with "Covid-19 pneumonia." *Id.* ¶ 19. On February 10, her breathing was characterized as "wheezing and expiratory." *Id.* ¶ 21. On February 16, MWHC called her daughter, Anitra Linzy, to notify her that her mother was in sepsis, was sent to the ICU, and was likely to die that day. *Id.* ¶ 22. According to medical records, the attending physician assessed Green from outside the room "because the physician was pregnant and concerned for her own safety because Ms. Green was Covid-19 positive." *Id.* ¶ 24. Although Green was placed on a ventilator machine for life support, the hospital attempted to convince Linzy to agree to take Green off life support because Green was unlikely to improve. *Id.* ¶ 25. With Green unable to breathe and "any active resuscitation efforts . . . ongoing but failing," she died later that day. *Id.* ¶¶ 22–24, 26. According to medical records, the cause of death was COVID-19 pneumonia. *Id.* ¶ 27.

## II.      Procedural History

In June 2022, Linzy brought this wrongful death action on behalf of the estate of her mother, Green. *Id.* at 1; *id.* ¶ 1. She raises one count of medical malpractice, under which she alleges that MWHC was negligent in exposing Green to COVID-19 and in failing to properly care for Green after she was diagnosed with COVID-19. *Id.* ¶¶ 30–36. She demands, among other forms of relief, actual damages of $10 million. *Id.* at 7.

MWHC moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. to Dismiss [Dkt. #6]; Mem. in Supp. of Def.'s Mot. to Dismiss ("Mot.") [Dkt. #6-1]. Linzy opposed, Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opp'n") [Dkt. #9], and MWHC filed a reply, Def.'s Reply in Supp. of Mot. to Dismiss ("Reply") [Dkt. #10]. The motion is now ripe for decision.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a Rule 12(b)(6) motion to dismiss, the Court "assume[s] the truth of all well-pleaded factual allegations and construe[s] reasonable inferences from those allegations in a plaintiff's favor." *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 239 (D.C. Cir. 2021) (quoting *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016)).

## DISCUSSION[1]

At the time of Green's death, the District of Columbia had in effect a broad grant of civil-liability immunity for healthcare providers treating COVID-19:

> Notwithstanding any provision of District law[, a] healthcare provider, first responder, or volunteer who renders care or treatment to a potential, suspected, or diagnosed individual with COVID-19 shall be exempt from liability in a civil action for damages resulting from such care or treatment of COVID-19, or from any act or failure to act in providing or arranging medical treatment for COVID-19 . . . .

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because Green was a citizen of Maryland, MWHC is a citizen of the District of Columbia, and the amount in controversy exceeds $75,000. Compl. ¶¶ 2–3; *id.* at 7; *see also* 28 U.S.C. § 1332(c)(2).

D.C. Code § 7-311(a)(1) (expired Feb. 4, 2022); *see also* Coronavirus Support Temporary Amendment Act of 2021, Act No. 24-62, § 1004(b), 68 D.C. Reg. 4824, 4898 (June 24, 2021) (providing for expiration 225 days after effective date).[2]  The statute effectively creates immunity from liability for acts or omissions constituting negligence, but immunity does not extend to "[a]cts or omissions that constitute actual fraud, actual malice, recklessness, breach of contract, gross negligence, or willful misconduct." D.C. Code § 7-311(c)(1).

Linzy does not dispute that MWHC is and was a "healthcare provider" as that term is used in section 7-311(a)(1). Opp'n at 5; Reply at 2.  She instead disputes that MWHC "render[ed] care or treatment to a potential, suspected, or diagnosed individual with COVID-19," D.C. Code § 7-311(a)(1), because Green was originally admitted to the hospital for treatment of asthma, not COVID-19, and in fact tested negative upon admittance.  Opp'n at 5; *see* Compl. ¶¶ 11–14.

The problem with Linzy's argument is that Green eventually *did* test positive for COVID-19 and *did* receive care and treatment for that diagnosis of COVID-19.  As Linzy alleges, Green tested positive for COVID-19 on January 30, 2021, was diagnosed with COVID-19, and received "active resuscitation efforts" from MWHC and was placed "on a ventilator machine for purposes of life support." Compl. ¶¶ 18–19, 23, 25.  The statute has no requirement, as Linzy seems to think, that COVID-19 be the very first condition for

---

[2] It is undisputed that the immunity statute applies to alleged wrongdoing that occurred when the statute was in effect, even if, as here, the civil action arising from that wrongdoing was filed after the statute's expiration. Mot. at 3–5; Opp'n at 4–5.

which the healthcare provider rendered care or treatment.   D.C. Code § 7-311(a)(1). Because MWHC "render[ed] care or treatment to" Green, a "diagnosed individual with COVID-19," *id.*, Linzy's argument against the applicability of the statute is unconvincing.[3]

Because the immunity statute applies, Linzy's suit is foreclosed unless she alleges that MWHC's treatment constituted "actual fraud, actual malice, recklessness, breach of contract, gross negligence, or willful misconduct." *Id.* § 7-311(c)(1).   She focuses on recklessness,[4] Opp'n at 6, which an individual evinces "when he or she 'knows, or has reason to know of facts which create a high degree of risk of harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk,' or 'has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so.'" *Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 66 (D.C. 2015) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493–94 (2008)).   "It must involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence." *Id.* (quoting Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 1965)).

---

[3] Reaching that conclusion, the Court need not entertain MWHC's alternative argument that Green was at all times a "potential . . . individual with COVID-19," D.C. Code § 7-311(a)(1), because of overall high case rates at the time and because she was tested upon admittance to the hospital and, as an elder individual on dialysis, was at high risk of suffering severely from COVID-19.  Mot. at 7; Reply at 3–5.

[4] The Court therefore need not address the other types of culpability listed in section 7-311(c)(1), on which MWHC spends some time arguing.  *See* Mot. at 8–9; Reply at 6–9.

Although the complaint does not contain any version of the word "reckless," it does contain some factual allegations that get close to supporting a plausible claim to relief requiring recklessness. As Linzy points out, Opp'n at 6, the complaint alleges that Green was "incorrectly" placed in a hospital room alongside a patient who had been undergoing treatment for COVID-19 for over two weeks. Compl. ¶ 17. And it alleges that Green had asthma and was on dialysis, which, it seems reasonable to infer, put her at a particularly high risk of dangerous harm from COVID-19. *Id.* ¶¶ 15–16.

Although those factual allegations get close, they fall short of adequately pleading that MWHC was reckless in treating Green. Absent, most importantly, are any allegations that MWHC "kn[ew], or ha[d] reason to know" that it would "create a high degree of risk of harm to" Green by placing her in a room with a patient being treated for COVID-19. *Destefano*, 121 A.3d at 66. Linzy alleges that the room placement was "incorrect[]," Compl. ¶ 17, but that allegation says nothing about MWHC's state of mind in making the alleged incorrect placement. Based on that allegation alone, MWHC may well have placed Green in that room mistakenly. But "mere inadvertence [or] incompetence" amounts only to negligence. *United States v. Wallace*, 964 F.2d 1214, 1220 (D.C. Cir. 1992); *see Destefano*, 121 A.3d at 66–67 (a defendant hospital's failure to review paperwork "may show that the hospital was negligently inattentive" but not "that the hospital knew or had reason to know about the . . . hazardous conditions"). And in light of Linzy's multiple allegations that MWHC was merely negligent, *see* Compl. ¶¶ 33–36, 40–41; *id.* at 7, it would be too charitable to say that the complaint alleges "something more than negligent"

conduct by MWHC.  *Destefano*, 121 A.3d at 66 (quoting Restatement (Second) of Torts § 500 cmt. a).[5]

## CONCLUSION

For the foregoing reasons, defendant MWHC's Motion to Dismiss [Dkt. #6] will be GRANTED without prejudice.  An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[5] Holding that the immunity statute forecloses Linzy's claim as alleged, the Court need not decide whether, as MWHC argues, Linzy lacks capacity to sue as personal representative of Green's estate.  Mot. at 9–13; Opp'n at 6–8; Reply at 10–12.